IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK BLOCK** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-556** |
| | : | |
| **GENERAL MOTORS LLC** | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                                                   **December 14, 2023**

Derek Block is an automotive technician who was replacing the battery of a 2021 GMC Yukon when he injured his finger on a jagged bit of metal. He says the vehicle is defective. He hopes to forestall summary judgment and reach a jury even though he has no expert to testify about the supposed defect.

A plaintiff does not always need an expert to show a product is defective. But a plaintiff does need enough evidence — of some kind — to allow a jury to reasonably reach that conclusion. That's Mr. Block's problem. He has no expert, and his evidence consists of his own observations and three photographs that fall below the threshold to support a verdict. Mr. Block volunteers to be his own expert, but he never disclosed an expert report and has not demonstrated his qualifications under Rule 702.

Viewing the facts in the light most favorable to Mr. Block, we grant GM's summary judgment motion with respect to Mr. Block's products liability claims. We also grant summary judgment with respect to Mr. Block's breach of warranty cause of action because GM did not sell Mr. Block the vehicle.

I.    **Background**[1]

Mr. Block graduated from automotive technical school in 2005. *See* DI 28 ¶ 4. He began his career in the automotive industry at Hill Buick GMC — starting as an apprentice, and eventually becoming an automotive technician. *See id.* From the start of his career until 2020, Mr. Block had "replaced 'well over 100'" car batteries. *Id.* ¶ 5.

On September 29, 2020, Mr. Block injured his left index finger replacing the battery of a 2021 GMC Yukon. *See id.* ¶ 1. Mr. Block positioned his hand underneath the battery to remove it, but the battery slipped. *Id.* ¶ 3. When it slipped, Mr. Block's hand "'fell' on a 'sharp piece of metal.'" *Id.*[2]

The piece of metal, pictured below, was the "sharp edge 'of the metal fender brace nearing the battery housing'" and firewall of the Yukon. *Id.* ¶ 2. Mr. Block described the metal as part of "the design of the car structure" and "part of the sheet metal of the car." *Id.* Ex. C at 89:21-90:5 (Mr. Block's deposition). The metal lacerated and fractured Mr. Block's left index finger. *Id.* ¶ 2.

---

[1] Our background facts come from (1) the statements of fact that Mr. Block admitted in his opposition to GM's summary judgment motion, (2) counterstatements of material fact submitted by Mr. Block as the non-moving party, (3) Mr. Block's deposition testimony, and (4) the exhibits attached to Mr. Block's amended complaint, which Mr. Block addressed during his deposition. *See* Fed. R. Civ. P. 56(c).

[2] At the time of the incident, Mr. Block wore only latex gloves — no other protective equipment. *See id.* ¶ 6. Nor did Mr. Block use a "fender cover." *Id.* ¶ 7.

 

*See* DI 8 Ex. A (the red arrows are Mr. Block's).

Mr. Block sued GM for "plac[ing] into the stream of commerce a defective" metal bracing that caused his injury. *See id.* ¶¶ 13, 18. Mr. Block also claims that GM breached an express and implied warranty that the GMC Yukon "was merchantable, fit for use, and suitable and fit for its particular purpose under common law and" Pennsylvania law. *See id.* ¶ 42.

We were assigned Mr. Block's case during fact discovery, *see* DI 18, and upon the completion of discovery, GM moved for summary judgment, *see* DI 28. GM argues that Mr. Block's products liability claims[3] fail because he cannot prove to a jury that the vehicle had a defect without expert testimony. *See id.* at 8-11. Mr. Block failed to submit an expert report despite telling us that he was planning to do so and "despite three extended [case] deadlines."

---

[3] Mr. Block asserts two products liability causes of action: a strict liability claim, *see* DI 8 ¶¶ 17-35, and a negligence products liability claim, *see id.* ¶¶ 36-40.

*Id.* at 11.[4]  And GM argues that Mr. Block's breach of warranty claim fails for two reasons: there is no proof of defect, and GM never sold Mr. Block the vehicle.  *See id.* at 13-15.

Mr. Block responds that Pennsylvania law does not require expert witness testimony to prove his product liability claims.  *See generally* DI 29.[5]  Even if it did, according to Mr. Block, he could be his own expert given his experience as an automotive technician.  *See id.* at 11-13.  Finally, Mr. Block argues that his breach-of-warranty claim may survive even though he is "not the end consumer" of the vehicle.  *See id.* at 13-14.

On reply, GM notes that Mr. Block "had an expert inspect the subject Yukon along with GM's expert, but did not identify that individual or produce a report (unlike GM)."  DI 30 at 3.[6]  And GM argues that it could not challenge Mr. Block's self-designation as an expert because he did not disclose himself as a potential expert during discovery.  *Id.*  Further, GM contends that Mr. Block "has no background, training, credentials or experience to qualify him as an expert as to the alleged defect in the structure of an automobile."  *See id.* at 4.

We have subject-matter jurisdiction.  *See* 28 U.S.C. § 1332(a); DI 8 ¶¶ 5-6.  GM's motion is ripe for adjudication.  For the reasons explained below, we grant GM's motion for summary judgment.

---

[4] *See also* DI 17 (Judge Brody extending case deadlines); DI 19 (parties second joint request for deadline extension, stating "Plaintiff's liability expert will need time to review Defendant's discovery Answers"); DI 23 (our grant of the parties' second joint motion for an extension); DI 26 (Mr. Block's unopposed motion to extend deadlines, explaining that he "retained both liability and medical experts" and that his "liability expert cannot complete his report without a vehicle inspection"); DI 27 (our grant of a third deadline extension).

[5] Citations to Mr. Block's opposition use the pagination of the CM/ECF docketing system.

[6] *See also* DI 26 ¶¶ 12, 13 (Mr. Block's unopposed extension motion noting that his "liability expert cannot complete his report without a vehicle inspection.").

4

II.     **Standard of Review**

Federal Rule of Civil Procedure 56 allows parties to move for summary judgment on claims or defenses. We "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 414 (3d Cir. 1999).

"A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' but 'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203-04 (3d Cir. 2022) (citation omitted) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citation omitted) (quoting *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)). "[W]e must review the facts in the light most favorable to the nonmoving party." *Id.*

III.    **Analysis**

   A. **Mr. Block does not adduce sufficient non-expert evidence for a lay juror to conclude that the metal bracing that injured his finger was defective.**

Under Pennsylvania law,[7] "[t]he test for strict liability . . . requires a plaintiff to prove: '(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's

---

[7] The parties do not dispute that Pennsylvania law applies to Mr. Block's claims.

5

hands.'" *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 709-10 (3d Cir. 2018) (quoting *Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 881 (3d Cir. 1998)). "There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect." *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995).[8]

Mr. Block has not exactly been clear about his theory of defect.[9] The claims, arguments, and limited evidence presented suggest that a design or manufacturing defect is at issue. But we need not sort that out because Mr. Block admits that "regardless of which theory of liability [he] pursues, he is not required to present expert testimony." DI 29 at 8. And that is the issue that GM wants us to focus on.

A plaintiff does not always need an expert for a case like this — it depends on what the jury would need to reasonably find in plaintiff's favor. A pair of Third Circuit decisions illustrates under what circumstances courts may conclude that expert testimony is necessary to prove a product defect. *See Padillas*, 186 F.3d at 415-16; *Oddi v. Ford Motor Co.*, 234 F.3d 136

---

[8] "Under a design defect theory, a plaintiff 'may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.'" *Cohen v. Johnson & Johnson*, 634 F. Supp. 3d 216, 230 (W.D. Pa. 2022) (quoting *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)). A manufacturing defect is demonstrated "by proving a breakdown in the machine or a component thereof." *Sullivan v. Werner Co.*, 253 A.3d 730, 736 n.2 (Pa. Super. Ct. 2021) (quoting *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354-55 (Pa. Super. Ct. 2015)). And "[t]o prevail on a failure to warn theory, [a plaintiff] must show the [product] is unreasonably dangerous with the warning provided, and that the absence of warning was the proximate cause of his injury." *Kurzinsky v. Petzl Am., Inc.*, 2019 WL 220201, at *4 (E.D. Pa. Jan. 16, 2019) (citing *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 901-03 (Pa. 1975)).

[9] *See* DI 8 ¶¶ 19a-i (alleging "defective design and/or manufacture," as well as a "failure to warn purchasers and end users of the dangers of the" car). In opposition to GM's motion, he says "that the defect is apparent." DI 29 at 10. He also responds to GM's statement of undisputed material facts by arguing "[e]xpert testimony is not required *under a failure to warn theory*." DI 29 ¶ 21 (emphasis added).

6

(3d Cir. 2000). On the one hand, expert testimony is required if the subject matter of the products liability claim is of a "highly technical nature." *McCracken v. Ford Motor Co.*, 392 F. App'x 1, 3 (3d Cir. 2010) (citing *Oddi*, 234 F.3d at 159). On the other hand, "expert evidence" is "unnecessary" where "testimony and pictures may enable the jury to clearly see the construction of the [allegedly defective product] and the manner of its use." *Padilla*, 186 F.3d at 416.

For example, the plaintiff in *Padilla*, injured by the blade of a chicken cutter, proffered "other non-expert proof" for his claims, like pre-accident reports noting the cutter's unsafe condition, evidence of a cutter with "a more robust guard system" than the one that injured him, and an employee's memorandum referring to the cutter's preexisting dangers. *Marshall v. Zimmer, Inc.*, 2020 WL 5408209, at *7 (E.D. Pa. Sept. 9, 2020) (summarizing *Padillas*). The non-expert proof, according to the Third Circuit, made it possible for a jury to decide whether a defect existed without expert testimony. *Padillas*, 186 F.3d at 416.

In *Oddi*, the Third Circuit "drew a distinction between" *Padillas* and an allegedly defective "front bumper and flooring of the cab of [a] truck." *Zimmer*, 2020 WL 5408209, at *8; *see Oddi*, 234 F.3d at 159. The plaintiff in *Oddi*, a truck driver, argued that Ford defectively designed the "front bumper of the bread truck" he drove, leading to injuries when the truck hit a guardrail. *Oddi*, 234 F.3d at 141. The Third Circuit rejected the truck driver's argument that he could pursue a negligent failure-to-warn claim against Ford[10] without expert testimony, "believ[ing] that a juror could [not] look at the front bumper and the flooring of the cab of the truck [the truck driver] was driving and reasonably conclude, not only that its design was

---

[10] The truck driver also brought a failure-to-warn claim against the company that "designed and manufactured the finished car." *Id.* at 140.

7

defective, but also that testing would have disclosed the defect and that it could have been remedied." *Id.* at 159. Unlike the front bumper of a car, a "whirling cutting blade" for chicken "without a proper guard is obviously dangerous" to a lay juror. *Id.*

Here, the parties essentially ask us to classify this case under either *Padillas* or *Oddi*. *Compare* DI 28 at 12 ("The Third Circuit's decision in *Oddi* demonstrates the necessity of expert testimony here."), *with* DI 29 at 10 (Mr. Block drawing comparison to *Padillas*). But the question is not merely whether the defect at issue is more like a chicken cutter or front bumper of a bread truck. The bigger question is whether Mr. Block has sufficient non-expert evidence for a lay juror to conclude that the metal bracing was defective. And the degree of non-expert evidence required to support a potential verdict depends entirely on the facts and circumstances of a particular case.

Without an expert,[11] the record evidence in this case is too sparse to allow a jury to find in Mr. Block's favor. Unlike the plaintiff in *Padillas*, Mr. Block does not have sufficient forms of non-expert proof. The only evidence Mr. Block provides is his own deposition testimony and three pictures of the GMC Yukon's interior. *See* DI 29 at 10. And one of the three pictures is of the interior of a different GMC Yukon — not the one that injured Mr. Block. *See* DI 29 Ex. A at 119:10-120:16; DI 8 Ex. A. "[O]n the [limited] record before us, we cannot" determine that Mr. Block's "non-expert evidence will be sufficient to submit his claim of defect to the jury." *Padillas*, 186 F.3d at 416. It may well be that Mr. Block *could* prove his case without an expert, but there is simply not enough non-expert evidence. Thus, his products liability claims do not

---

[11] The expert question is probably a red herring because the record reveals nothing that an expert might even base her opinion on consistent with Federal Rule of Evidence 702. Perhaps that's why no expert report was ever surfaced in this case.

survive summary judgment.[12]

### B. Mr. Block fails to demonstrate that he is qualified to testify as an expert regarding the vehicle's metal bracing.

Mr. Block suggests that he could simply act as his own expert. GM responds that Mr. Block is not qualified. DI 30 at 4 ("[H]e has no background, training, credentials, or experience."). It is hard to assess this question because we lack the usual source material for making the assessment — an expert report. Mr. Block's unexcused failure to identify himself as an expert and produce a report precludes him from doing so now. *See* Fed. R. Civ. P. 37(c). And GM points out that Mr. Block's failure to disclose his intent to serve as his own expert "precluded" it from "challeng[ing] the designation." DI 30 at 4. No doubt. But regardless of Mr. Block's failure to disclose himself during discovery as a potential expert, he has not demonstrated that he has the qualifications to be his own expert.

Federal Rule of Evidence 702 "has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). The Third Circuit construes the first requirement — qualification — liberally, but "requires 'that the witness possess specialized expertise.'" *Id.* (quoting *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)). "[A] broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

---

[12] Our analysis applies to both products liability causes of action brought by Mr. Block — strict liability (Count I) and negligence (Count II). *See* DI 8; *see also Oddi*, 234 F.3d at 143, 159 (analyzing elements of "negligent failure to test" claim — which include duty, breach, causation, and harm — and explaining that "expert evidence is generally required in a products liability case where a defect is alleged").

The burden to demonstrate that an expert is qualified by a preponderance of the evidence[13] falls on the party presenting the expert. *See Padillas*, 186 F.3d at 418. And trial courts are the gatekeepers of expert determinations, with the Third Circuit reviewing decisions under an abuse-of-discretion standard. *Pineda*, 520 F.3d at 243.

Outside of relying on the Third Circuit's liberal standard, the only case law that Mr. Block advances is a pre-*Daubert*[14] decision from the Eighth Circuit, where the "owner and operator of a body and fender shop" was permitted to testify about the "function and operation of a ball joint" in a car's suspension system that allegedly caused a car to crash. *See Moran v. Ford Motor Co.*, 476 F.2d 289, 290 (8th Cir. 1973). He says he is like the body shop owner. *See* DI 29 at 12. The body shop owner "had frequently examined wrecked cars . . . inspected suspension systems to discover what parts were broken or worn . . . was familiar with the function and operation of a ball joint and . . . was able to recognize visible wear patterns on automobile metal parts." *Moran*, 476 F.2d at 290. And the Eighth Circuit held that his "practical experience . . . ma[de] him well qualified as an expert witness." *Id.*

Mr. Block's practical experience — as best as we can understand from the limited record — differs from the body shop owner in *Moran* because there is no evidence that Mr. Block has any specialized knowledge of the car component that injured his finger. Mr. Block relies on his deposition testimony, which walks through his fifteen-year background as an

---

[13] Federal Rule of Evidence 702 was amended on December 1, 2023. Citing Federal Rule of Evidence 104(a), the Committee Notes state that one purpose of amending Rule 702 is "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendments. In other words, the preponderance-of-the-evidence standard "applies to the three reliability-based requirements" of Rule 702, which includes the requirement that an expert be qualified. *Id.*

[14] *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993).

automotive technician. *See* DI 29 at 12. The testimony shows that Mr. Block has a wealth of experience inspecting vehicles, but it does not sufficiently demonstrate that he has specialized knowledge of, for example, the design of metal bracing under the hood of a car, or how car manufacturers design (or provide warnings for) the metal bracing.

Indeed, "generalized qualifications" may suffice to show qualification. *In re Paoli*, 35 F.3d at 741. But the record does not reflect that Mr. Block's practical experience made him "familiar" with the compartment issues that caused his injury. *Moran*, 476 F.2d at 290; *cf. Pineda*, 520 F.3d at 244-45 (holding an expert with "expertise in the stresses and other forces that might cause a material such as glass to fail" was substantively qualified to testify about a liftgate shattering on a Ford Explorer — despite no qualifications "in the design of automobile rear liftgates or the drafting of service manual instructions").

Therefore, we reject Mr. Block's argument that he could serve as his own expert.[15]

### C. Mr. Block's breach-of-warranty cause of action fails because GM did not sell him the car that injured him.

Mr. Block brings a single cause of action alleging breaches of both express and implied warranties. *See* DI 8 ¶ 42. But to recover under either theory of liability under Pennsylvania law, a sale must have occurred. *See, e.g.*, *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 543 (E.D. Pa. 2021) (citing 13 Pa. Cons. § 2313) ("Under Pennsylvania law, an express warranty arises out of the representations or promises *of the seller*." (emphasis added)); *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) ("To establish a breach of either [the implied warranty of merchantability and the warranty of fitness for a particular purpose], plaintiffs must show that the equipment they *purchased* from defendant was

---

[15] And of course we have no idea what evidence Mr. Block would use to form his expert opinion, how he would proceed to analyze that evidence, or whether those analytical methods hold any water.

defective." (emphasis added)).

There is nothing to suggest that Mr. Block was sold the vehicle that injured his finger. The only case that Mr. Block cites in support of his cause of action addresses whether "privity of contract is required to state a claim for breach of warranty" — not whether a sale occurred. *Israel Phoenix Assur. Co., Ltd. v. SMS Sutton, Inc.*, 787 F. Supp. 102, 103 (W.D. Pa. 1992). And even still, a sale of goods occurred in *SMS Sutton* — making the Pennsylvania Uniform Commercial Code applicable. *See id.*

Without a sale, we grant GM's motion to dismiss Mr. Block's breach-of-warranty cause of action.

## IV.     Conclusion

Because of the absence of evidence — expert or otherwise — that a jury could rely upon to find in Mr. Block's favor, we grant GM's summary judgment motion. We also grant GM's motion with respect to Mr. Block's breach-of-warranty cause of action.